SAVANNAH & OGEECHEE CANAL COMPANY, plaintiff in error, vs. JOHN RYAN & JOHN FEELY, defendants in error.

As a general rule, this Court will not control the discretion of the Court below, in dissolving an injunction, unless there appears to have been an abuse of that discretion, in the violation of the principles of law or equity applicable to the facts in the case.

Motion to dissolve injunction. Decided by Judge FLEM-MING. Chatham county. Chambers. April, 1868.

The "Savannah and Ogeechee Canal Company," a body corporate by the laws of Georgia, filed its bill for injunction and relief against John Ryan and John Feely, as follows : Said Company was incorporated by an Act of the General Assembly of the State of Georgia, assented to 23d December, 1833, and amended by an Act approved on the 18th day of December, 1847. By said first mentioned Act, said Company, under the name of "The Savannah, Ogeechee, and Altamaha Canal Company," was authorized to own and construct a canal from the Savannah to the Ogeechee river, and from the Ogeechee to the Altamaha river, according to the terms and conditions of said Act. By the tenth section of said Act, said Company was empowered to hold any and all lands and real estate necessary for constructing, maintaining, and repairing said canals and the works connected therewith ; by the sixteenth section of said Act, said Company "is obliged to keep said canals and locks in good and sufficient order, condition, and repair, and at all times, free and open, remarkable casualties and accidents excepted"; and by the

seventeenth section, it is enacted that "it shall be unlawful for any person or persons to throw dirt, rubbish, trees, or logs into the said canals, or to injure the locks, basins, feeders, or banks, or any part of the work or works appertaining to said canals, or either of them, or in any manner to hinder or obstruct the navigation of said canals, or either of them; and any person or persons so offending shall be liable to an indictment as for a misdemeanor, and on conviction thereof shall be fined or imprisoned, or both, at the discretion of the Judge of the Court before whom is the conviction thereof; and the said offender or offenders shall also forfeit and pay to the said corporation four times the amount of the damages by them sustained, with costs, to be recovered by action of debt before a Justice of the Peace, or any court of competent jurisdiction.

In compliance with the terms of said Acts of Incorporation, the Company is the lawful owner of a canal which connects the Savannah and Ogeechee rivers, and of —— feet of the land adjacent to either bank of said canal.

John Ryan and John Feely, and the persons employed by them, have, from time to time, cut and interfered with the banks of said canal in the said county, and the lands immediately adjacent to said canal, whereby dirt and rubbish have been thrown into said canal, and injury done to the locks, basins, feeders, banks, and works appertaining thereto, and the navigation of said canal has been hindered and obstructe; complainant, from time to time, repaired said cuts and damages, and has requested the said John Ryan and the said John Feely, and all other persons to desist from the aforesaid illegal conduct, acts, and doings; but they refused to comply with this reasonable request, and threaten that they will continue to cut the banks of said canal, and otherwise to interfere with said canal, its works, and the lands adjacent thereto, property of complainant. The damages produced by a continued cutting of the banks of said canal, and by otherwise interfering with the works appertaining to it, and the hindering and obstructing the navigation thereof as aforesaid, would be irreparable; a resort to the ordinary course of the common

law courts would be productive of a circuity and multiplicity of suits. Wherefore, it is prayed that said John Ryan and John Feely, and all persons acting or claiming under them, or either of them, may full and perfect answers make to the several matters and things aforesaid, and be restrained and perpetually enjoined from the cutting, injuring, or in anywise interfering with said canal, its banks and other works, etc.

The injunction was granted.

The defendants answered the bill substantially as follows : The incorporation and the ownership of the canal were admitted, but they said that the Company had no title to the lands joining the canal, but only such right of way to the extent of —— feet as is proper and necessary to carry into effect the objects of incorporation, and that the title for all other purposes remained in the person or persons who made such conveyance of the right of way to said company ; that these defendants owned lands (and one of them was lessee of the lands) adjoining said canal, the natural drainage of which is through said canal, and must have been along the line of said canal, even if it had not been made ; the cultivated parts of these lands have been drained into, and through, said canal, and cannot be successfully drained otherwise ; and, at all points where said lands were cultivated, said drains have been actually kept open and used for more than twenty years ; they have only exercised their rights as proprietors and lessees in clearing out and keeping open said drains and ditches into said canal. They denied that they had in any other manner cut and interfered with the banks of said canal, or the lands immediately adjacent the property of said canal, or had thrown any dirt or rubbish into the same, whereby any injury has been done to the locks, basins, feeders, banks, and works appertaining to said canal, or had hindered or obstructed the navigation of the same, or had threatened to do or commit any of said acts, as set forth in complainant's bill. They claimed their rights, as proprietors and lessees, to keep open and fit for use, the ditches and drains heretofore leading

into said canal, and absolutely necessary to make their lands of any value whatever, for agricultural purposes.

Further, they said that since they had been restrained by the injunction from keeping open said drains and ditches into said canal, and the said complainant has been thus permitted absolutely to obstruct and stop the drainage of said lands, the latter had been under water, and these defendants had been entirely prevented from making any preparation for the crop which they intended to cultivate on the same, and they had suffered great loss and damage thereby. And they denied that the injury was irreparable, and could not be redressed by resort to the courts of law, or that such resort would be productive of circuity and multiplicity of suits. Upon the coming in of this answer, they moved to dissolve the injunction, and on the argument, read in support of their answer, affidavits, the substance of which was as follows :

JAMES S. BRANTLY said, that he had been well acquainted with the condition of the Savannah and Ogeechee canal for more than twenty years past, and had resided nearly the whole of that time close to the banks of said canal, and been accustomed to come down the canal in boats; had also been familiar for many years past with the tracts of land now owned and cultivated by John Ryan and John Feely, and the tract adjoining the former, now leased by him from Mr. Hodgson; knew from his own observation and experience that it had been the custom and usage during all this time, for the lands adjacent to the canal to be drained into the same ; and he had seen the ditches leading into the canal for this purpose, at various points, ever since familiarity with the canal commenced, and that he remembered with certainty, that such habit of drainage had prevailed as to the three tracts of land before referred to, at least as far back as the year 1856, and on one of them there was and is a conspicuous deep ditch into the canal, which had been constantly kept open as a drain, and cleard out from time to time for that purpose, and he had never known or heard of any other mode of drainage resorted to for the lands aforesaid.

WILLIAM B. HODGSON said, that he had been acquainted.

with the condition of the Savannah and Ogechee canal for twenty-five years, and had been a proprietor of lands upon both sides of said canal, and adjacent thereto, during that time, and actually leased a tract of land to the defendant, John Ryan, which approached to within a few feet of the canal, and that both he and said John Ryan owned other tracts of land adjoining said tract above named, which lie upon both sides of said canal; that during the whole of this time, as he knew from his own personal observation, these lands, as well as other lands adjacent to said canal, have been drained into said canal; nay, that he had that day examined ditches which had been used for the drainage of other lands further removed from the canal than the tracts already referred to, and which ditches he knew to have been used for drainage during said twenty-five years, and verily believed them to have been opened and used for said purposes during a period of thirty years, and that, through these ditches, said last mentioned lands have been also drained into said canal; further, that the natural drainage of all the lands in that vicinage was originally in the general direction of the canal, and that unless said drainage had been through said canal, the construction of said canal would have stopped up and destroyed, or have greatly impaired the means of drainage for all of said lands. He knew that the land now occupied by the defendant, John Ryan, adjacent to said canal, had been under cultivation for twenty years, and longer, and the land occupied by the defendant, John Feely, for several years past, and that it would not be possible to cultivate or to keep in cultivation said lands if said means of drainage into said canal should be denied, and that irreparable damage would thereby be occasioned to their owners.

JOHN HOGG, City Surveyor of Savannah, furnished a sketch of the land, and affirmed, in explanation of it, that the swamp land had a distinct fall from the Louisville road, southwardly, across the Savannah and Ogechee Canal, and down to the low lands of the Springfield plantation. The construction of the canal intercepted the natural flow of water along this swamp, leaving no alternative but to drain

into the canal itself. The lands on the south side of the canal, belonging to Mr. Feely, while they showed no well-defined swamp, had an inclination towards the canal. This is shown by the ponding of water along the south bank, leaving those portions a little removed comparatively dry. From observation, extending over a period of thirteen years, he knew that the drainage of land along the canal had been by ditches or covered drains leading into it, and he had for years seen such ditches and drains on portions of the land above described.

And the said complainant read affidavits of the following substance:

JOHN SCUDDER and EPHRAIM SCUDDER deposed that they had known the Savannah and Ogeechee Canal, as now located between the rivers Savannah and Ogeechee, for over thirty years past; that they were, from 1847 to 1858, owners and part owners of said canal; that said canal had always flowed through the same lands through which it now flows for over the last thirty years, and rights of ownership over the lands for —— feet on each side of it, and over the banks of the canal, had been exercised by the parties owning said canal for over thirty years; that, in all the time during which they had known said canal, no proprietor of adjoining lands had exercised or maintained any right to drain his lands by ditches, or otherwise, into said canal.

Said HOGG deposed, that at the request of F. Blair, Esq., President of the Savannah and Ogeechee Canal Company, he had made a survey of the lands of John Ryan, on the Louisville road, in order to determine if there is any method of draining said lands other than into the Savannah and Ogeechee Canal, and found it practicable to ditch northwardly, across the Louisville road, and into that portion of Central Railroad right-of-way lying on the south side of the track, excavated for the purpose of forming road-bed, thence along said right-of-way, eastwardly, to the point where the Augusta and Louisville roads meet, thence in a southwardly direction, crossing the Louisville road into Lot No. 7, Springfield plantation, owned by A. Holliday, Esq., into

a branch of the Springfield swamp. There is another and more direct route across Lots Nos. 1, 2, 3 and 4, into and through a brick culvert running eastwardly into the low lands of Springfield plantation. The lands of Mr. John Feely may be drained eastwardly, across the lots owned by Mr. Miller, (being a part of the Springfield plantation,) into a branch of the Springfield swamp. Mr. Miller's lands are already ditched. It would be necessary to deepen these ditches, in order to obtain the necessary fall. This drainage may be effected without crossing the canal.

FRANCIS BLAIR, President and Treasurer of the Savannah and Ogeechee Canal Company, WILLIAM REMSHART and EDWARD LOVELL deposed that since the year 1858, no proprietor or lessee of lands adjoining the said canal had ever asserted or maintained any right to drain his lands, by ditches or otherwise, into said canal; that in one instance, permission had been given temporarily, in which case the party availing himself of the permission always acknowledged the right of the company to stop him; that one of the ditches opened by John Ryan, which appears to be an old ditch, was originally opened by Daniel H. Stewart, who was a stockholder in said company, and applied to said company for permission to open said ditch, and acknowledged their right to close it whenever they pleased; that the said ditch was closed by the company after said Stewart had used it about a year, and had ever since been closed; that the lands through which the ditches opened by said Ryan and Feely are cut, are lands originally conveyed to the said Savannah and Ogeechee Canal Company by Alexander Telfair, Ebenezer Jencks, and Joseph Stiles, and that said Company holds them in fee simple, and had so held them for over thirty years consecutively, and adversely to any one else, as will appear by the titles to said lands attached; said titles were bonds agreeing to make title in fee simple, when called for. They were dated in June, 1826.

In addition to the above, E. Lovell swore that Daniel H. Stewart paid to the Savannah and Ogeechee Company one dollar a year for the privilege of keeping open the ditch

above referred to, deponent being at the time President of the company.

Besides this, they read from their charter, as follows:

SEC. 16. And be it further enacted, That the said corporation shall be obliged to keep the said canals and locks in good and sufficient order, condition and repair, and at all times free and open, remarkable casualties and accidents excepted, to the navigation of boats, rafts, and other water crafts, and for the transportation of goods, merchandise and produce. Provided, the boats, rafts, and other water crafts, are not so constructed as to injure said canals, or to obstruct the free navigation thereof.

SEC. 17. And be it further enacted, That it shall be unlawful for any person or persons to throw dirt, rubbish, trees or logs into the said canals, or to injure the locks, basins, feeders or banks, or any part of the work or works appertaining to the said canals, or either of them, or in any manner to hinder or obstruct the navigation of the said canals, or either of them; and any person or persons so offending shall be liable to an indictment as for a misdemeanor, and, on conviction thereof, shall be fined or imprisoned, or both, at the discretion of the Judge of the Court before whom the conviction thereof is had; and the said offender or offenders shall forfeit and pay to the said corporation four times the amount of the damages by them sustained, together with costs, to be recovered by action of debt, before a Justice of the Peace or any Court of competent jurisdiction.

After hearing argument, the Judge ordered the injunction to be dissolved, and this is assigned as error.

HARTRIDGE & CHISHOLM, for plaintiff in error, said, injunction will be continued until the hearing, when the facts are doubtful. 6 Florida, 368, 533; 27 *Ga.*, 216.

The granting or dissolving of an injunction is a matter in the discretion of the Chancellor; but that discretion must be a sound one. 6 Fla. R., 236, 142, Roberts vs. Anderson; Irwin's Code, sec. 3153, 2 John's C. R.

The public, represented by plaintiff, and having an interest in

S. and O. Canal Company *vs.* Ryan and Faely.

the corporate property, may be injured through the stoppage or incumbrance of trade and commerce passing through the canal; and, in such a case, this Court should allow the temporary injunction to continue for a hearing.

JACKSON, LAWTON & BASINGER, for defendants in error, replied: This Court will rarely ever interfere with the discretion so exercised, and never, except where it has been abused. *Johnson vs. Allen*, 35 *Ga.*, 253; *Edwards vs. Banksmith*, 35 *Ga.*, 214, 217; *Swift vs. Swift*, 13 *Ga.*, 145; *Buchannan vs. Ford*, 29 *Ga.*; 490; *Somerville vs. Reid*, 35 *Ga.*, 52.

His discretion should not be interfered with, if exercised, in deciding as to the comparative credibility of witnesses, and the weight of evidence, where the subject matter and the witnesses are *local*, and therefore better known to a circuit Judge than to a reviewing court.

It was not competent for the Legislature to grant this charter, if it had authorized complainants so to divert the natural flow of water as to damage owners of adjacent lands, without making adequate compensation therefor. Code, sec. 4890–1, sec. 4906. " Any interruption to the common and necessary use of land is equivalent to the *taking* of it." Angell on Water-courses, sec. 465; 14 Connecticut, 146. If they are permitted to divert the water at all, they must make such other outlets as will fully compensate and prevent damage. 21 Pickering, 348, 349. The lapse of time should prevent injunction. Wells vs. Sweaton, 1 Cox's Chan. Cases, 101–2–3, *Dent vs. Summerlin*, 12 *Ga.*, 8, not applicable to the facts of this case. They must resort to those remedies pointed out in their charter. See Charter, sec. 17.

WARNER, J.

The error assigned to the judgment of the Court below in this case, is in dissolving the injunction on the coming in of the answer of defendants, and the accompanying affidavits filed therewith. The bill was filed to restrain the defendants from obstructing the complainant's canal by cutting and interfering with the banks thereof, whereby dirt and rubbish,

S. and O. Canal Company *vs.* Ryan and Feely.

were thrown into the same, to the injury of the works apper-
taining to said canal, and the navigation thereof. The de-
fendants deny, by their answer, that they have in any other
manner cut or interfered with the banks of said canal, ex-
cept the keeping open certain ditches and drains running
into said canal ; that they have only exercised their rights as
the proprietors and lessees of the adjoining lands in clearing
out, and keeping open said ditches and drains, and claim
that said ditches and drains running into said canal, have ac-
tually been kept open and used for more than twenty years.
The *real injury* complained of in the complainant's bill is,
the *keeping open these drains and ditches*, which run through
the defendant's land into the canal. Upon a careful examin-
ation of the allegations in the complainant's bill, the defend-
ants' answer thereto, as well as the respective affidavits filed
by the parties which appear in the record, we are of the opin-
ion there was no error in the Court below in dissolving the
injunction. As a general rule, this Court will not control
the discretion of the Court below in dissolving an injunction,
unless there appears to have been an abuse of that discretion
in the violation of the principles of law or equity applicable
to the facts in the case, which the record, now before us, does
not exhibit. Let the judgment of the Court below be af-
firmed.